UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| | * | |
| v. | * | Cr. No. L-08-0381 |
| | * | |
| JOHNNIE BULTER and | * | |
| CALVIN WRIGHT | * | |
| Defendants | * | |

*******

MEMORANDUM

This is a drug conspiracy case. Defendants Johnnie Butler and Calvin Wright were charged in a five-count Indictment with conspiracy to distribute a substance containing heroin, in violation of 21 U.S.C. § 846 (Count I); possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count III); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count IV). The Indictment also charged Johnnie Butler with discharging a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count II), and Calvin Wright with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count V). On January 29, 2010, following a thirteen-day jury trial, Butler was convicted on Counts I, III, and IV, and acquitted on Count II. Wright was convicted on counts Counts I, III, IV and V.

Now pending is Wright and Butler's joint Post-Verdict Motion for Judgment of Acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. No hearing is necessary to decide this matter. See Local Rule 105.6 (D. Md. 2008). For the reasons stated herein, the Court will, by separate Order of even date, DENY the motion.

**I.     Background**

The following facts were presented at trial. In October 2007, the Government began to investigate a suspected heroin distribution organization in Baltimore, Maryland. Through the use of confidential informants, controlled buys, physical surveillance, and wiretaps on seven cellular telephones, the Government learned that Butler, assisted by Wright, was supplying and controlling a group of heroin shops in the City.

On September 11, 2008, the Government arrested Butler and Wright, and executed a series of search and seizure warrants on several residences associated with the organization. These searches recovered numerous tools of the drug trade, including cellular telephones, SIM cards, and numerous jugs for distributing heroin in quantities suitable for individual consumption. Officers also recovered an SKS assault rifle from a green Dodge minivan in which Butler and Wright had previously been observed. Finally, on October 27, 2008, a maintenance worker found four plastic bags, each of which contained numerous gelatin capsules of heroin, hidden in the drop-ceiling of the apartment in which Wright had resided prior to his arrest.

The Government introduced all of these items into evidence. In addition, the Government played numerous telephone calls recorded from the wiretaps. These calls included conversations between Butler and Wright, as well as conversations between Butler or Wright and other members of the organization. Several members of the organization testified at trial to explain the circumstances surrounding the calls and the significance of coded terms used in the conversations. In addition to the calls and cooperator testimony, one of Butler and Wright's suppliers testified that he provided the defendants with multiple kilograms of heroin on several occasions. In sum, the evidence established that Butler and Wright operated a complex, lucrative drug conspiracy.

After the government closed its evidence, Wright made a motion, which Butler joined, for a judgment of acquittal on all counts. The Court reserved decision on the motion, and on January 29, 2010, the jury returned a verdict of guilty on Counts I, III, IV, and V. Wright and Butler then renewed their motion.

## II.     Analysis

### A.     Standard

Under Rule 29 of the Federal Rules of Criminal Procedure, a jury verdict must be sustained if there is substantial evidence to support it, viewing the facts in a light most favorable to the Government. Glasser v. United States, 315 U.S. 60, 80 (1942). Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Smith, 451 F.3d 209, 216 (4th Cir. 2006) (citation omitted). In determining whether there is substantial evidence, this Court "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). This Court "can reverse a conviction on insufficiency grounds only when the 'prosecution's failure is clear.'" United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (quoting United States v. Jones, 735 F.2d 785, 791 (4th Cir. 1984)).

### B.     Discussion

Wright and Butler argue that they should be acquitted because the Government failed to meet its burden on each of the counts of conviction. The Court will address each of the counts in turn.

### 1. Count I

The motion merits little discussion with respect to Count I, the drug conspiracy charge. As discussed above, the evidence at trial, which included physical evidence, testimony from cooperating witnesses, and recorded telephone conversations between the defendants and their confederates, established that Butler and Wright operated an organization that distributed multiple kilograms of heroin in Baltimore, Maryland. In sum, there was substantial evidence to support the jury's conclusion that the defendants were guilty beyond a reasonable doubt of conspiracy to distribute heroin.

### 2. Counts III and IV

Butler and Wright argue that they should be acquitted on Count III, the charge of possession of a firearm in furtherance of a drug trafficking crime, and Count IV, the charge of being a felon in possession of a firearm, because there was not substantial evidence that they were in possession of the SKS assault rifle found in the green Dodge minivan. The defendants further argue that, even if there was substantial evidence for a jury to find them in possession of the assault rifle, the possession was not in furtherance of a drug trafficking crime, as set forth in Count I.

It is well-established that possession may be constructive. See United States v. Wilson, 484 F.3d 267, 282 (4th Cir. 2007) ("The Government only had to prove that [the defendant's] possession was constructive meaning that he exercised, or had the power to exercise, dominion and control over the firearm." (quotation marks omitted)). Further, under a Pinkerton theory, a conspirator is liable for all reasonably foreseeable acts of a co-conspirator done in furtherance of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); United States v. Cummings, 937 F.2d 941, 944 (4th Cir. 1991). The Fourth Circuit has explained that "[a]bsent

evidence of exceptional circumstances, . . . it [is] fairly inferable that a codefendant's possession of a dangerous weapon is foreseeable to a defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994) (quoting United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991)).

As stated, the police found the guns in the green Dodge minivan. There was no testimony from anyone who saw Butler or Wright with the guns. There was no forensic evidence such a fingerprint that connected the defendants to the weapons. Nevertheless, under the principle of constructive possession and under a Pinkerton theory, a fair-minded jury could have concluded that Butler and Wright possessed the firearms.

First, the evidence established that the minivan served as a "company car" for the conspiracy. Both men had been observed driving the van or riding in it as a passenger. Further, the van had been observed travelling to and from known stash houses and street shops associated with the Butler organization, ostensibly delivering drugs or picking up receipts. In sum, the van was intimately connected to the defendants and the conspiracy.[1]

Moreover, the Government introduced into evidence a call recorded on the wiretap on September 10, 2008, less than twenty-four hours before the Government arrested Butler and Wright. In this call, Butler proclaimed, "[T]hat's four nigga's strapped rolling in this green Dodge sports van," to which Wright responded, "Dumb as shit." Gov't Recorded Conv. 39. Testimony from two witnesses, an expert and a cooperator, established that "strapped" means armed.

---

[1] Thus, even if the jury concluded that other members of the conspiracy possessed the firearm, the jury could attribute that possession to Butler and Wright because of the nature of their organization. See Kimberlin, 18 F.3d at 1160.

Wright and Butler offered an innocent explanation for the "strapped" reference. They argued that Butler was merely repeating lyrics from a popular hip-hop song. See 50 Cent, I'll Whip Ya Head Boy (2005) ("Two niggas in the front, two niggas in the back/ that's four niggas ridin' strapped in Grandpa's Cadillac."). Butler and Wright played the song for the jury and argued that Butler's comment was not connected to the firearm found in the minivan.

Nevertheless, a fair-minded jury could have ascribed a sinister meaning to the "strapped" reference. Although Butler and Wright did not explicitly state that their confederates were riding in the van armed, such explicitness was not required for the jury to reach that conclusion. Because they were discussing illegal activity during their calls, Butler and Wright often used code or talked obliquely around a subject. Such a lack of explicitness is prudent if one is a drug dealer worried about the possession of a wiretap. Given these facts, the jury could have reasonably concluded that Butler and Wright exercised dominion and control over the rifle. Cf. Tresvant, 677 F.2d at 1021 (noting that the Government is "entitled to the benefit of all reasonable inferences from the facts proven to those sought to be established").

As to the issue of whether the firearm was possessed in furtherance of a drug trafficking crime, United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002), is controlling. In Lomax, the Fourth Circuit explained that the Government must "present evidence indicating that the possession of a firearm furthered, advanced, or helped forward a drug trafficking crime." Id. The court enumerated several factors to consider, including " 'the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.'" Id. (quoting United States v. Ceballos-Torres, 218 F.3d 409, 414-15 (5th Cir. 2000).

Here, the firearm in question was found concealed in the vehicle that the Butler organization had used to transport its narcotics and proceeds. The rifle was recovered shortly after the vehicle had been observed at several locations associated with the conspiracy. In addition, the firearm was not registered to either Butler or Wright. Their possession was illegal given that they had each previously been convicted of a felony punishable by more than one year of imprisonment and their rights had not been restored. Accordingly, there was substantial evidence from which a jury could reasonably conclude that Butler and Wright's possession of a firearm furthered, advanced, or helped forward their drug trafficking activities.

### 3. Count V

Wright argues that he should be acquitted on Count V, the charge of possession of heroin with intent to distribute, because there was not substantial evidence that he was in possession of the drugs found by the maintenance worker.[2] Wright argues that possession of the drugs cannot be attributed to him because he no longer resided in the apartment when they were found.

As discussed above, it is well-established that possession may be constructive. See Wilson, 484 F.3d at 282. Here, the Government proved that prior to his arrest, Wright resided in the apartment in question; that Government agents failed to discover the drugs when they searched the apartment; that the apartment was sealed following the search, and that the apartment remained sealed until the maintenance worker entered to perform routine work and discovered the drugs. From these facts, a reasonable jury could conclude that Wright had possessed the drugs and concealed them in the drop-ceiling.

---

[2] Wright does not dispute that the heroin, which had been "cut" and placed in gelatin capsules, was intended for distribution.

**III.     Conclusion**

For the reasons stated herein, the Court will, by separate Order of even date, DENY the Motions.

>                    /s/
> Benson Everett Legg
> United States District Judge